JOHN E. CHARLTON

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER *and*

SEMET-SOLVAY DIV. OF ALLIED CHEMICAL CORP.

(No. 13785)

Decided July 15, 1977.

*Rodney A. Skeens* for appellant.

*Spilman, Thomas, Battle & Klostermeyer, Lee F. Feinberg* for appellees.

McGRAW, JUSTICE:

This appeal came on to be heard on the final decision and order of the Workmen's Compensation Appeal Board entered September 29, 1976, affirming the order of the State Workmen's Compensation Commissioner entered September 19, 1975, denying an award of workmen's compensation to claimant, John E. Charlton, and upon the entire record as presented to the Court on the appeal.

Claimant's initial application, filed September 17, 1971, was based on a complaint that he had "worked in coal treatment water for considerable lengths of time, shoes and feet were soaking wet, skin peeled off and became ulcerated (ulcers)". The Commissioner's ruling of December 15, 1971, denied the claim, holding that the disability was not due to an occupational disease received in the course of and resulting from employment. Claimant described his disability as "ulcerated feet", developing primarily from standing and working in mine water "treated with magnetite and sulphuric acid, and also contained grease, oil, kerosene and stuff." His work continued for five or six months during which time his feet "got all infected and messed up"—wrinkled and peeled and became infected. He underwent medical treatment for eleven months and returned to the same work for about one month when he quit, June 26, 1970, because he could not stand on his feet or wear shoes. On protest

and appeal, the Appeal Board, by order and opinion of January 29, 1973, reversed the Commissioner's rulings denying compensation and directed the Commissioner to refer the claim to the Occupational Pneumoconiosis Board, formerly the Occupational Diseases Medical Board, "for its investigation and report of findings and conclusions on the medical questions in controversy, as outlined in the opinion of the Board hereto attached." The Appeal Board noted in its opinion that "medical evidence is extremely sparse", that "claimant apparently suffered from an ulcerated condition on his feet which may or may not have been caused or aggravated by claimant's exposure to water during his employment", and that "there is a reasonable doubt on pertinent medical questions." The claim was not referred to a medical board, as directed by the Appeal Board's order, but was referred to Dr. Beatrice H. Kuhn for examination and report.* At a hearing on August 19, 1975, counsel for claimant and the employer concurred in the procedure and the examiner stated that "the file has been developed to its fullest extent under the direction of the Appeal Board's order." In the Board's final decision, when the appeal was returned to it on the record as developed, the Board noted that the medical evidence obtained "establishes that claimant was suffering from advanced Buerger's Disease with massive scarring and ulceration", and concluded that "perhaps claimant's working in the mine water aggravated his pre-existing condition, Buerger's Disease." The record discloses that claimant is unable to work.

---

* Dr. Kuhn's deposition was taken at her home in Florida on April 28, 1975. In her deposition she states her specialty is dermatology and that, on August 31, 1973, she had seen claimant, John E. Charlton, at her office in Charleston, West Virginia, at the instance of the Workmen's Compensation Commissioner. The written report of her examination, dated September 6, 1973, is a part of the record. In her report she recommended that claimant "should be evaluated by a competent vascular specialist." In her deposition she affirms that claimant had Buerger's Disease, not an occupational disease, that he had "massive damage to his skin and subcutaneous tissue probably precipitated by the conditions under which he worked at Semet-Solvay."

Reports from the medical profession have not been full and firm in their exposition and explanation of the effects and contributions of industrial working environments relating to Buerger's Disease or to the aggravation thereof. 3 Gray's Attorneys' Textbook of Medicine, Chapter 61, *Buerger's Disease* (1976); 1 Larson's Workmen's Compensation Law, § 12.20 (1972); 10 Trauma, No. 5, pages 38-41; Cantor, *Traumatic Medicine and Surgery for the Attorney,* New Articles Service, pages 765-766 (1971); 3 Proof of Facts, Buerger's Disease, 79-82. The Appeal Board concludes its affirmation of the Commissioner's denial of compensation with the statement that "perhaps claimant's working in the mine water aggravated his pre-existing condition, Buerger's Disease."

Many years ago the Court reversed a compensation ruling with directions that the Commissioner fix a percentage of disability in a Buerger's Disease case. *Hall v. Compensation Commissioner,* 110 W. Va. 551, 159 S.E. 516 (1931). In the *Hall* case, the Court stated in the single syllabus point:

> "The fact that an employee, injured in performing services arising out of and incidental to his employment, was already afflicted with a progressive disease that might some day have produced physical disability, is no reason why the employee should not be allowed compensation, under Workmen's Compensation Act, for the injury, which, added to the disease, superinduced physical disability."

Eleven years later, in another Buerger's Disease case, *Manning v. State Compensation Commissioner,* 124 W. Va. 620, 22 S.E.2d 299 (1942), the Court again held in syllabus point three:

> "A diseased workman who in the course of and resulting from his employment receives an injury, which aggravates or accelerates the disease, to the extent of causing a disability sooner than would otherwise have occurred, is entitled to compensation from Workmen's Compensation Fund."

Workmen's Compensation law is statutory and changes have been made in the law over the years. Irrespective of the changes in the statute, none of which militates against the claimant, and irrespective of the form with which the claimant filed his claim, he has shown quite clearly that his exposure to an industrial cleaning solution resulted in a disabling condition. In today's world we cannot be guilty of retrogression in consideration of the health and welfare of working people upon whom the well-being of the nation reposes.

Upon careful consideration of the record as presented, the decision of the Appeal Board, dated September 29, 1976, affirming the Commissioner's order of September 19, 1975, denying an award of compensation to claimant, John E. Charlton, is reversed and this cause is remanded to the State Workmen's Compensation Commissioner with directions for further development, through medical and administrative expertise, as a basis for such workmen's compensation award found to be appropriate. It is further ordered that the Court's ruling be certified to the Appeal Board and to the Compensation Commissioner pursuant to provisions of W. Va. Code, 23-5-4.

*Reversed and remanded with directions.*